Case number 13-7165, Daniel Brink, et al., Appellants v. Continental Insurance Company, et al. Ms. Julian, for the appellants. Ms. Storen, for the appellees. May it please the Court, I am Joshua Glellen, appearing on behalf of the plaintiffs, all of whose claims were dismissed by the District Court, both for lack of jurisdiction and for failure to state a claim upon which belief could be granted. This Court, like the Supreme Court, has repeatedly emphasized that the Longshore Act, like other workers' compensation laws, affects a fundamental bargain in which workers and the survivors of workers who suffer injuries or deaths on the job are provided a prompt but limited remedy in return for which employers are relieved of liability that they might otherwise bear for working. For full compensatory damages and tort for their negligence. First, of course, that bargain applies only to accidental injuries incurred on the job. It does not apply even for on-the-job injuries if the employer's, if the injury or death results from the employer's intentional. Before we get to this point, I'd like to interrupt. Well, apparently I don't. There's a jurisdictional problem, which I think we need to address before we get to this question. So you filed a Notice of Appeal, right? Yes. And the Notice of Appeal is jurisdictional. And the Notice of Appeal is from the final judgment entered into this action on the 26th day of September that denied plaintiffs' motion for reconsideration of the earlier order. So on its face, the Notice of Appeal only applies to the decision of the Court on reconsideration. And in the Entravision case, we said that when that is the only thing from which you apply for appeal, that's the only thing you can appeal. Unless there's some other thing that gives us an element, an understanding of your intent. So at the time you appealed, you only appealed from that. And when you filed your Notice of Appeal in the District Court, the clerk of the District Court then sent to our court, as is required by the rules, the order from which you were appealing. And the only thing that the District Court filed with us was the minute order denying the motion for reconsideration. And there was a service list, and Mr. Block and Sir Skrepnik were on the service list. So as of that point, which, by the way, was the last day for filing under the rules, all we have is a notice that you're appealing from the decision about reconsideration. And as I said, in Entravision, we said when that's the case, that's the only thing we can consider. So how do we have jurisdiction to consider your complaint, which is really about the underlying decision of the District Court, rather than the District Court's determination to deny you reconsideration? Well, I think the opinions which we cite in our reply brief on that point from both the Supreme Court and this Court explain that that requirement of Rule 3 should not be given a hyper-technical application, as long as it was clear to all concerned that the intent to appeal from the underlying judgment was obvious to all concerned. But if we look only at the notice of appeal, I don't see how that would be clear. You don't list the other order as something from which you are appealing. You just note that the other order was denied reconsideration. Well, I think that was true in those cases that we have cited as well, that the notice of appeal does refer to the earlier order. It says it's seeking review of the denial of the Rule 59 motion, but it also refers to that Rule 59 motion as adhering to the Court's earlier disposition. Well, it just says that's what it did. It denied the other one. The other cases that we've referred to are ones where there's been something else which provides information to indicate to everybody that you're actually appealing from both. And that could include the docketing statement, which ultimately in this case does refer. The only problem is, and it's a problem that this Court has not previously considered, is that the docketing statement is filed after it's too late. That is, the docketing statement is filed after the time for appeal has passed. So if the docketing statement had never been filed, no one would know that you wanted to reconsider anything other than the reconsideration motion. And the docketing statement was filed too late, not from the point of view of our rules of when you file a docketing statement, but of being outside the jurisdictional period. What's the answer? How do we resolve that problem? I think we resolve it by the test of whether anyone could have been misled. None of the defendants has said, oh, we misunderstood. We thought you were only seeking a review of the denial of reconsideration, the denial of the Rule 59 motion. The defendants knew perfectly well that the appeal related to the contentions which the District Court had rejected in its earlier order. And again, they have never alleged that any confusion resulted from the imprecision under Rule 3 of the Notice of Appeal. Well, I thought that the prejudice is a second and independent requirement, but doesn't there have to be an actual statement? It's not just a question of whether they were misled or not. There has to be something that puts people on notice. The jurisdictional rule isn't, are you misled? The jurisdictional rule is, what are you appealing from? And the defendants, the circumstances make it perfectly plain. I think in situations just like this, the earlier order was referred to in the Notice of Appeal. Yes, there was an imprecision in its phraseology. Well, in Entrevision, the notice said, Entrevision petitions this Court for review of the FCC's memorandum in which the FCC denied the petition for partial reconsideration of the FCC's earlier report and order in which it decided not to protect low-power television. That's virtually exactly the same as what's happened here. In other words, they ask for review of a denial of reconsideration of an earlier order that went against them. And in that case, perhaps there was a possibility of confusion. Perhaps the explanation is that the grounds urged for reconsideration in that case were different from those which had been rejected by the district court previously. So that there was a possibility of confusion, that the intent to appeal may have been limited to the additional arguments that were urged under Rule 59. And you don't think the fact that the order that was then submitted to the Court, to this Court on our docket, and is on our docket as of that date, which is only the minute order, would enhance confusion? No, I don't think it would give rise to any confusion. And again, as I say, the defendants have never alleged any confusion on what we were appealing. They have relied on a technical defect alone, and the Supreme Court and this Court have indicated that it should not be read in a technical – Rule 3 should not be applied in a technical manner where the intent to appeal was clear. Well, again, on the question of the confusion, we said in Southwestern Bell that prejudice is a necessary but not a sufficient condition. Lack of prejudice is a necessary but not a sufficient condition for excusing the failure to correctly specify what you're appealing for. I think the reference in the Notice of Appeal to that earlier order, despite the fact that the district court clerk did not attach the earlier order, the fact that the earlier order was explicitly referenced in the Notice of Appeal should be good enough where the circumstances make clear that that's the only thing there was to appeal. The rulings that had been made in the earlier order are the only things there were to appeal. Well, you seem to me to have a reasonably good argument that you've made with respect to the ADA claims on the petition for – on the reconsideration, right? Those, the only way you actually managed to get up here is by appealing from the refusal to reconsider them and to permit you to file an amended complaint. So it's not true that you have nothing. You just have nothing on the DBA claims. But on the ADA claims, you do have something, right? Well, and the – I mean, there are no DBA claims here. Well, I'm sorry. I'm using that as a shorthand. You understand. I do understand, absolutely. All right. I don't want to belabor this. I have to – I raise it because jurisdiction is something we have to sua sponte raise. All right. So I understand. Go ahead. The district court acknowledged that the allegations of the complaint are extremely troubling. There is nothing in the Defense-Based Act Exclusive Remedy provision on which the district court relied that applies to anything other than state workers' compensation claims. And it was plain error for the district court. Isn't the other Exclusive Remedy statute section incorporated into the base act? Yes, absolutely. Longshore Act section. It does extend beyond the state workers' compensation. Yes, it does indeed. But it's really not material that the second Exclusive Remedy provision does not cover it since the other one does, right? Well, it's material only in that the district court misread the DBA laws as well. But yes, you're absolutely correct. It's a claim that's an Exclusive Remedy that goes beyond the workers' compensation. But you have a court on this. In fact, it does not encompass workers' compensation claims under state laws. But the Longshore Act – Well, we were told it covers about everything else. Well, no, it includes any claim that is based on an accidental injury incurred in the course of employment. And don't all of these arise from accidental injuries in the course of employment? Only in a remote sense. Well, your further claim is nothing more than addressing the handling of the injury by accident. In most instances, that's correct. Now, some of the plaintiffs never were compensation claimants under the Act. They never were employees of the defendants. Who were they? They were medical providers with whom the defendants contracted and authorized the provision of services and said they would pay for them and then did not pay for them. In one instance, resulting in the loss of a business, a bankruptcy, and a great deal of financial loss. That, if it was intentional – Was that properly a part of this claim? Well, yes, certainly so. How many claimants left that were there? Two or three. Two or three? Two or three. And what is the certified class? Oh, there is no certified class. We never got to that point. There's not a certified class? For present purposes, it's not. What is the description of a class that would include those two or three claimants in numerosity and commonality? Perhaps they don't qualify for class action status. But that, I think, is – we never even reached that point. The district court said none of these plaintiffs has ever – The intentional acts, or what you call intentional acts, are not the tort in which the liability arises. They're involved in the handling of the underlying injury, which was an injury by accident in the course of employment, right? Yes. That is correct. And the notion in some of the cases that have been decided and dismissed under the exclusive remedy provision for actions taken in the course of administration of the claim, if you will, have been simply incorrect in characterizing the act as providing an exhaustive and comprehensive scheme for that. There are no provisions of the act, nor any authorities of the Department of Labor, that go to policing the conduct of the insurer in handling the claim. Can I ask, when you say that all these cases are incorrect, does that include our Hall case? It does indeed. And I fully understand that this panel is not able to do anything about that for us. And, in fact, that one obviously deals with intentional infliction, not just some theory about negligence, right? Oh, yes. Negligence is – So assume for the moment that – well, you don't have to assume. You've already told us it's correct that the panel can't do anything about Hall. What's left? Which kinds of claims in the complaint are left if Hall is the law? Certainly all of those plaintiffs who were not compensation claimants. The actions taken by the defendants with respect to those non-claimants could not possibly be within the scope of this supposedly comprehensive remedy that Hall posited. So I understand. So those are just the two or three that you're talking about? You have two or three plaintiffs who are non-claimants? Besides the medical providers, there are also spouses of injured workers, disabled – Yes, but that arises from the workers' claim. That's derivative of the cost type claim, right? No, I think not, because it is based on deliberate and intentional actions by the defendants that – But you rose out of the handling of the underlying cost type claim, right? Yes, they did. Yes, yes, absolutely. But those plaintiffs have no remedies whatsoever under the Act. The Act does not apply to them at all. I just want to be sure I understand. You agree that if Hall is the law, that the only plaintiffs here who have a claim that survives are the ones who are not Compensation Act recipients, right? Those who are not the injured contractors? Yes, injured employees. So only the non-injured employees. For this panel, your claim is only about the non-employees, is that right? Yes, that is true. Okay. Now, of the non-employees, assume we take the position which I think Judge Santel is hinting at and that other courts have taken, which is that where the injury depends on the validity or not of the right of somebody to a payment, that that's also precluded. So, for example, a late payment to a medical provider or a late payment to a spouse in the end depends on whether a payment was required and on whether the payment was late, both of which can be litigated by the employee before the board. So assume for the moment you lose on that point. I'm sorry, I have to interject very briefly. The fact that it was late does not provide any, there's nothing to litigate before the administrative tribunals for a late payment because there is no remedy for late payment. Well, I thought that the statute requires the timely payment, is that wrong? It does not require, it requires either the timely payment or the filing of a one-page form. But nonetheless, the statute takes into consideration one way or the other the timeliness. I don't want to debate that question. I'm just trying to figure out what's left if you lose certain things. I'm not saying you're going to lose them, but I want to know. I understand. If we were to conclude that you're precluded from raising any claim relating to the validity or the lateness of a payment, what do you have left among the non-employees because they're the only ones who are left? Well, the promise of a payment, the assurance by an insurance carrier, we will pay for the wheelchair. We will pay for the medical treatment, as a result of which a business incurs expenses for those medical treatments and supplies, and then having guaranteed beforehand that payment will be made, the carrier does not make the payment, that results in damages that are completely separate from the damages resulting from the employment injury itself. Even if there was no entitlement to the payment in the first place, the fact that the carrier said, I will pay, that's a cause of a claim? Yes, indeed so. So how many of those cases are there? And I think in at least two of those cases, there was not a dispute that those payments were due. They said they would make them. Indeed, they said they had made them when they had not, and continued to represent to the Department of Labor and to the plaintiffs that they had paid them when, in fact, they had not. Okay, other than that category, are there others? You have some claims in here, meaning the very long complaint, about threats, which seem to be, in a way, unrelated to payments. Now, I'll kill you if you continue this. Do you have those? I can't tell whether for sure the way you read this, but you have things like use of third-party administrators to threaten to physically harm. Yes. You have those threats claims. Yes, we do. Those would be unrelated, I take it. It depends on how broad a view you take of what is related to the claim. Yeah, but that's not an argument about claims are due, claims aren't timely, etc. Those are basically a tort of a threat to assault somebody. Yes. Is that right? Yes. And we have explicitly disavowed any claim in these proceedings for payments that should have been made. Those are not the damages we're seeking. It is the independent results of post-injury actions, deliberate actions, that we seek. I get it, but I'm trying to get post-injury actions unrelated to payments, failure to pay, timeliness, etc. Now, you have a claim about medical malpractice, is that right, or not? No. So there's no claim that the employer provided the wrong kind of care, is that right? There are some claims about medical care, and I wasn't sure I understood them. There are claims for denial of medical care, refusal to provide medical care. And by that you mean to pay for, when you say provide, you mean pay for? Provide, well, yes, pay for or authorize. I see. I don't know, of the nurse or doctor that the company has on staff giving bad care, which itself led to damages. Unrelated to payment or non-payment? There are a couple of the plaintiffs who were indeed limited by the employer to inadequate medical care in-country, despite the fact that they needed more specialized care. When I say limited, you mean they wouldn't pay for it, not that the company doctor. I don't know whether, it's a little hard for me to tell from the complaint whether what you're saying is the company's provided bad doctors? No. No, you're not saying. No. Okay. They did not provide doctors at all. In some instances, for these defense-based workers, the only medical care that was available without transporting them out of the country in which they were working was inadequate and was known to be inadequate, and nevertheless, the employers refused to transport them. I see. So it's a refusal to pay for the transport. That's the issue in that one. Well, to provide the transport or pay for, I don't think there's a meaningful distinction. Well, I don't know if there's a meaningful distinction. I'm just trying to figure out if there is. If I'm now properly characterizing it, and apparently that is, I am. Yes. I think there are both kinds of cases where they refuse to pay for it and where they refuse to provide it or authorize payment for it. But when you use provide, you mean spending money in some way, right? Spending money for the transportation. Yes, surely so. The reason I ask is you have here, DynCorp medics would issue medication to employees unlicensed, unqualified. I take it you're not suing DynCorp for having medics who were unqualified. No. In fact, I think they were not DynCorp medics to begin with. They were the United States military medics on site. I'm just quoting from the complaint. You fooled us into believing you knew what you were talking about. Apparently I did not, Judge Sindel. But back on the threats, Mr. McConty's life was threatened by a member of Blackwater's management. Yes. So you would say that that's just an assault. That's a tort of assault unrelated to payment or not payment. Indeed, an intentional tort. Not negligence, but an intentional tort. And the act applies to no intentional conduct. We have to pass that question because Hall said it does apply to intentional conduct. So I'm asking you to, if we were to limit Hall to intentional conduct relating to payments, what is left? And I think you've provided me with that information. Yeah. Most of the plaintiffs seek relief that is foreclosed by Hall, and all I can ask the panel to do is urge the court to take another look at it en banc. I want to go back to those non-claimant plaintiffs you referred to, the two or three. I had the description of the class of claimants on page 188 of your complaint. I don't see anything in there about the people you're talking about as non-claimant plaintiffs. Where are they described in your complaint? Oh, well, each individual plaintiff's facts are set forth in the complaint. The description of the main class. Where do I find the plaintiffs who are not claimants? I think our reply brief specifies which ones they were. Tell me about your complaint. The reply brief, I think, cites to where in the complaint they are. Give me a second. I found all of these claimants. It's a rather prolix complaint to say the least, Counselor. There are 40 plaintiffs. The prolixity did not keep the district court from saying we had not adequately pleaded some of the claims. I think that was error. We had, indeed, fully set forth the facts in the first 300 counts of the complaint, and the district court was looking only to some of the later paragraphs and saying we had not adequately pleaded. Okay, I'll withdraw that question. Did you support also that Mariko claimed here in my reading of that complaint? Yes, you are. What is the enterprise? The enterprise is the combination of the claims agent with the insurance company and the employer. Now, in some cases, the employer was not a part of it. Does that constitute an enterprise under Mariko's version? I believe so, yes. What is your allegation of what the Mariko enterprise is in your complaint? Oh, boy. I'm not going to be able to quickly provide you with the paragraph. What is the Mariko type injury that you allege in your complaint? Injuries to property, to business and property, include, for example, the aforementioned medical coordinator who was promised payment and incurred $20,000 of expenses in reliance on that promise, a promise which the employer, the insurance carrier, the claims agent, we believe never did intend to provide and did not provide. And who do you, once you identify, if you do, this enterprise, who do you allege controls the enterprise amongst itself? Well, the insurance companies, in fact. Control. Where do you allege? Now, control, we know in the yellow bus and the Supreme Court, I think, and what the Minister of Health and Welfare said, that control is a necessary allegation, a necessary element of Mariko's claim. Where do you allege that? The district court didn't rely on the lack of such an allegation anywhere that I can see. Otherwise, I'd be prepared to answer your question very directly. But I don't think that was the basis for the district court's rejection of the Mariko claims. The district court reasoned... If you don't adequately allege the claim, do you really seriously think we can send it back for further proceedings? Well, we did ask for leave to amend the complaint to... Did that amendment contain anything about the Mariko control? No, because the district court had not identified any pleading deficiency with respect to the Mariko claims. Thank you. Other questions? I thank the court. Thank you. Worth every tax dollar this costs. May it please the court. Richard Dorn, on behalf of Apoleis. As an initial matter, we agree with Judge Garland, your concerns regarding the notice of appeal and jurisdiction of this court to hear this appeal. We believe that the court correctly references the introvision decision and the concerns raised there about the need to, as rule of three states, specifically designate the judgment order or part thereof being appealed. In this instance, the notice of appeal simply refers, as the court noted, to the order of 26 September 2013, which was a motion for reconsideration of an earlier order that dismissed all claims. It does not, in fact, specifically seek to appeal that earlier order, and we specifically stated that in our statement of jurisdiction to this court. But in the cases surrounding introvision, we have allowed, we have looked at the docketing statements to see whether they indicated what actually was appealed. Docketing statements are always filed at least 30 days or so after. I don't think we've addressed the question. And we've always said that if the docketing statement is clear enough, and in this case the docketing statement is clear enough that they're appealing from both, that that's enough. What we haven't addressed is the question of whether the docketing statement has to be filed within the jurisdictional period or not. Are there any cases on that? Your Honor, we're not aware of any authority on that point. But we, again, the docketing statement, as the court notes, having been filed later than the notice of appeal, to the extent that would serve any purpose of expanding the scope of the appeal, it was not timely. And we contend, Your Honor, that the docketing statement itself simply lists the date of the reconsideration. The docketing statement itself also only talks about the reconsideration. Yes, Your Honor. There's a certificate of rulings, which is attached, and the certificate of rulings mentions both. Right. And, again, Your Honor, we're not aware of any authority on that point. But we agree with the court's reading of the docketing statement. Okay. Turning to the merits. Could you address the question that I was asking, which is, assuming that, well, of course, assuming that Hall is a lawyer. Yes. And assuming that Hall extends to matters relating to timely payment, withholding of payment, to which you're entitled under the DBA, are there any remaining items? And they've identified, opposing counsel just identified two kinds, and I have a bunch more to ask you about. But I don't think I need, I'm not asking you to roll up to make your whole pitch. Understood. All right. So imagine that the Blackwater did, as they say, threaten somebody. That is on page 487, that the third-party administrators threatened to physically harm or abscond with the employees. Are you suggesting that because these have something to do with payments, that an employee in a state, for example, in a state court couldn't file a simple assault claim? There's a difference between couldn't and didn't, Your Honor. Go ahead. To the extent. Stick with the couldn't for just a moment. Do you agree that they could? Under certain facts, if there is a tort or a crime, if there is criminal action or tortious action by someone who happens to be an employee of a contractor and there happens to be a DBA claim pending, but that tort or crime stands independent of the claim adjudication process or the evaluation of benefits, it would be a crime or a tort with or without that claim pending, then that claim may well be able to be brought and stand alone. If, for example, someone assaults someone else, there may well be a tort claim for assault and battery and personal injuries, but those claims are not asserted here. They're not asserted or? Well, no causes of action are alleged that would encompass it. As the Court noted, the threats allegations may well become an assault claim or could constitute an assault claim. But the way those allegations are used here, first of all, we don't have enough facts in the allegations to determine whether or not there is, in fact, a tort claim there. But second, and separate and apart from that, and far more importantly, the gravamen of this complaint, as counsel told you a few moments ago, is a dissatisfaction with the structure and the remedies available under the DBA. And that is the gravamen of the complaint. You can see it throughout the complaint. You can read it in paragraph two of the complaint, where they say this complaint is filed because of dissatisfaction with the DBA. You can see it on the first page of their opening brief, where they say that we are here essentially to ask this Court to rewrite the DBA. And the causes of action here, each tort claim, each of the state tort claims to which the issue of preemption applies, is brought within the constraints of the DBA, and it is alleging tortious injury because of the dissatisfaction with the claim adjudication process within the DBA. As counsel said a few moments ago, their concerns are that there is not recourse for intentional injuries that may arise in the course of the claim adjudication. Your Honor just pointed out that to the extent there are independent torts, that's a separate matter, but there may be separate recourse there. And, Your Honor, within the constraints of the DBA, there are in fact criminal sanctions against employers or their agents who make misrepresentations or who materially impede the ability to obtain benefits or who diminish, delay, or deny benefits based on misrepresentations. And to the extent an employer fails to abide by an order to pay benefits or fails to controvert its obligation to pay benefits and simply doesn't. I'm telling you, I'm not asking you to remake the whole argument. So if we were to rule in your favor, we could appropriately say that we are not, that this, by dismissing this complaint, this doesn't mean that independent tort actions that don't depend on the DBA couldn't be filed separately, right? Correct, Your Honor. To the extent there are independent torts such as assault or battery or sexual assault that are not dependent on a DBA claim being filed or adjudication, the adjudicative steps in the process of evaluating the right or adequacy of DBA benefits, simply because there's a DBA claim pending, it doesn't mean that a battery is not a battery. And that's sort of based on a reading of the complaint as because it's a class action, really, being tied to the DBA system, right? Well, it is, Your Honor, I think lands upon the logic of why it's framed as it is. There can be no class action if this is about people parking SUVs on the front lawn or assaulting individuals. That is not a class action. That is why it's pled as broadly as it is. But even if it were individual claims, which it is a putative class action, as pled, it is a programmatic assault on the DBA. So if all they had said, if they had filed a separate complaint against, in this example that I'm citing, Blackwater, for threatening to kill somebody, I'm not saying it happened or didn't happen, that would not be precluded by our dismissal of this particular complaint, which mentions that in a set of factual descriptions but which you say is not part of the actual claims. Is that right? I think that's correct, Your Honor. Okay. Also, there was discussion about what claimants may remain. And there were discussion of two categories. The first were medical providers. And, in fact, there is one medical provider in the complaint referenced. And it's Ms. Nikki Poole, and that's at JA 213, where you'll find the allegations regarding Ms. Poole. Ms. Poole was a nurse for Mr. Brink, a South African gentleman. Did you say the page again? I'm sorry. 213. And the allegations are that CNA, quote, unquote, authorized Ms. Poole to provide care for Mr. Brink. This claim is a derivative of Mr. Brink's rights as a DBA claimant. If Mr. Brink has no right to DBA benefits, his medical providers have no right to payment from CNA pursuant to those benefits. Well, let me just think about that. I'm thinking about that as whether that could be brought independently. Okay? So imagine CNA sends a letter to Ms. Poole saying, we promise to pay you. Regardless of whether he's entitled to the money or not, we promise to pay you. Please go ahead and buy the X-ray machine. And that's a contractual claim. She agrees. I will provide the payment. I will spend money. Would she not have a claim in quantum merit at least for the value of the X-ray machine that they promised, regardless of whether CNA was correct or not in deciding to pay? Possibly. Okay. And you're not excluding that from the claim? Correct, Your Honor. That is simply not a claim asserted in this lawsuit. Obviously, we'd be dependent on the facts of that claim. Yes. But if there is an independent contract, a new and separate contract from the DBA policy, there may be a claim there, but it's not alleged here. Okay. Also, there was discussion of survivors and family members, and the exclusivity provision of the Longshore Act plainly encompasses liability prescribed that is exclusive and in place of all other liability to the employee, the legal representatives, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employers of law. And, in fact, the Halls were husband and wife plaintiffs in this case. So you had Mrs. Hall asserting her own claim for intentional infliction based on the treatment of her husband, and this Court found that to fall within the exclusivity provisions. Okay. I'd like to move on to another topic, if you're finished with that. Yes. That's the ADA claims. Yes, Your Honor. Okay. So this requires a little sort of buildup, but bear with me for a second. Of course. We've said in Belizan and in Firestone, if you put the two together, that it is a clear abuse of discretion to fail to give a reason for refusing to permit an amendment, and that that failure is itself sufficient to overturn a 59E decision. And so my question in this case, the District Court denied the ability to amend the ADA claim, file an amendment to that part of the complaint. Why don't we have to send this back, as we did in Belizan, and require the District Court at least to explain why its dismissal should be with prejudice? I mean, it could have dismissed without prejudice, but the District Court dismissed with prejudice. Why don't we have to do that? Your Honor, the Court set out its reasoning in the original order on the motion to dismiss, and in evaluating the motion for reconsideration, found the proposed amendments to be inadequate to address the elements of the ADA claim. We're on reconsideration. That's the minute order? It is the minute order, Your Honor. Where did he give a reason for it? I'm not saying he didn't. At JA44, Your Honor, midway through the lengthy paragraph, you'll see that one carryover line ends with at 29 to 33. The discussion begins in the next sentence. I'm sorry, I've got to print out, I guess. What was the JA page again? 44, Your Honor. Okay, where is it? Midway down the lengthy paragraph, you'll see, again, the line begins at 29-33. The next sentence picks up the discussion. Right, so what I'm not following is why this amended complaint, at least, isn't sufficient to state an ADA claim. And, Your Honor, the Court found that the statements regarding the impairment of fundamental life functions and the request for accommodations were not adequately pled. That's what I'm having trouble with. This is 12b-6, under Iqbal, all requires is plausibility. As to the ADA claim, yes, Your Honor. As to the ADA claim, under Swierkiewicz, which the Supreme Court has not overruled, it's not necessary to have the elements of McDonnell Douglas in the complaint. All you have to do is provide enough allegations to make it plausible. On the disability, they're talking about people who've lost arms, who've lost legs, who can't sleep at night. It's not plausible to believe that those people are disabled within the meaning of the ADA. That seems implausible to me. I understand Your Honor's comments. I think the point that Judge Sullivan was making, that they weren't specifically expressed in terms of the ADA, in terms of whether or not they were impairment to the life functions, and whether or not accommodations from an employment perspective. I'll leave the accommodations for one moment. But that requirement, that they repeat the words of the statute, that's not required. Not only that's not required, it's not enough. The only question is whether there is allegations from which you could plausibly see that a claim like that could be made. And they do then, in the amended complaint, repeat the words of the statute. So both are covered. I understand your desire to win this, but this looks like we would be totally remaking our law about the ADA if we were to say that somebody who's lost arms and legs and can't sleep and all these other things, that there's no colorable claim, plausible claim that that person is disabled in a major life activity. And Your Honor, Judge Sullivan's reasoning was set out as an initial order. And as you say, the proposed amendment simply recited the statutory language. He found that to be an inadequate solution to the extent this court requires Judge Sullivan to offer further explanation as to the three plaintiffs bringing ADA claims against three defendants. Yes. We defer to the court on that. Okay, got it. Thank you. Certainly. May I address RICO, if Your Honor is interested? Yes. First of all, as we have agreed, RICO is, while obviously not preempted, the claim would violate the exclusivity provisions under this court's authority in Danielson in that it would essentially replace what is already an exhaustive, exclusive set of remedies with a potential treble damage claim, thereby creating the risk of inconsistent findings between the two judicial entities and also the risk of gutting, if you will, the administrative remedy as everyone goes to try their luck at treble damages. We think based on Danielson, the RICO claim is a non-starter. As to the elements alleged, as we briefed on the injury to Business for Property, it's very clear and, in fact, the authority relied on plaintiffs below. Brown out of the Sixth Circuit has recently been reversed on appeal, finding that workers' compensation claims cannot, and that their denial cannot constitute damage to Business for Property for RICO because it is derivative of personal injury and you cannot have a RICO claim based on any pecuniary damage caused, which is derivative of personal injury. As to the elements, the other elements of RICO, the trial court did, in fact, address those in a lengthy footnote in the motion to dismiss order, identifying correctly why Enterprise as well as Predicate Acts were not adequately fled, but unless the panel has any other questions, we would ask that the trial court be affirmed. No further questions, thank you. Is there rebuttal time? I always let everybody go over a little bit, so we'll let you go over some more, too. Two minutes, please. Thank you, Mr. Chief Judge. I will be very brief. I am reminded that there is an additional one of the plaintiffs whose assertion was against an employer other than her employer, another one that was operating in the same theater, for sexual assault. That sexual assault did indeed furnish a basis for a workers' compensation claim under the Defense Base Act, not against the defendant against whom she seeks damages in this proceeding. Her own employer. Could you say that again? Yes. The claimant was sexually assaulted by an employee of another employer operating in the same theater. She was entitled to Defense Base Act benefits for the disability that resulted. That has nothing to do with and raises no exclusivity of her remedy against the company who negatively hired the employee who assaulted her. It seems to me that the other side has conceded that, that that's an independent claim, and that if we were to dismiss your class action complaint here, you could still bring that separately, that that wouldn't apply to that. But this is not going to get you anywhere with respect to the class action, unless you have a class action of people who were sexually assaulted. No. And that claim is distinct from the class claims. Right. She is the only one in that situation. Does she have a separate? See, I, like the defendants, are having a little trouble exactly understanding the nature of the complaint that you filed. And the various counts, you don't have a separate count for her and for the sexual assault, do you? Yes, I think so. Just for her? It applies only to her? I think that is so, yes. Which one is that? Again, I'm not able to point to, in the Villanueva's complaint, to which those, but it is the claim of Christine Hull, the complaint of Christine Hull. Right. But there's a count of the, count one, count two, which one is it that is specifically about her and only about her? I'm sorry. I'll work with you through the counts. Count one says retaliatory discharge and discrimination. That clearly isn't it. Count two was RICO. That clearly isn't it. Count three was bad faith, torturous breach of covenant of good faith. That's not it. Which one is it? Which count is it? The intentional torts count should include that, I think. Which one is it? Fifteen and twenty-one. I'm sorry, which count? Fifteen and twenty-one. Unfortunately, I only have counts up to nine. Am I looking at the wrong thing? Paragraphs? I'm sorry. I'm not able to. I'm not saying it wasn't. I mean, I noticed the same thing as one of the paragraphs. I didn't see it listed as a separate count of the offense. I appreciate everything's incorporated over and over again, but it's hard to read, at least I didn't read, any of these counts as being a separate independent count just about one woman who had made what, seems like a perfectly acceptable independent tort, which the other side agrees would be if it had been made. If that is not a separate count, then no, I acknowledge that. And if the dismissal below would not bar that count. I think that even the other side agrees it wouldn't bar that count, so certainly raise it again. What's her name again? Christine Haldwin. Thank you. I did need to point out once again, though this is in the briefs, that once again this morning, my brother has read to you part of the exclusive remedy provision and has excluded the critical qualifier at the end, which is obviously a critical part of that clause. It's exclusive of remedies otherwise available to anyone claiming through the employee or anyone claiming through the employee on account of such injury. So it is only claims for the employment injury that are barred. The insurance companies or its claims agents, subsequent conduct causing additional injury, is an intervening cause of that later injury. And that is not encompassed, it may not even be a liability of the employer if the employer was not a participant in that separate subsequent tort. So the notion that recognizing the ability to secure a remedy for events, intentional conduct in the claims handling procedure would be inimical to the purposes of the Longshore Act itself or the Defense Base Act simply has no validity at all. That, again, that goes to Hall and the court has presently constituted, cannot do anything about Hall, but we will be seeking and we recognize that many of these claims, if Hall is correct, were properly dismissed. We will be asking the court to take another look at that and I hope. I think you've certainly preserved that argument. Yes. That would have to be in a petition for re-hearing. We have understood that coming forward. Okay, fine. All right, we'll take the matter under submission and we'll take a brief break. Thank you all.
judges: Garland, Brown, Sentelle